of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning. We're having here argument in our first case, number 13-7107, United States v. Adams. Ms. Jackson? May it please the Court. Mariana Jackson representing Appellant Richard Adams. No party to this case disputes the fact that Mr. Adams did not commit the crime for which he is currently serving 120 months in prison. Despite the fact that Mr. Adams raised this argument in his 2255 motion before the District Court, the Court failed to recognize that actual innocence is an exception to the enforcement of an appellate waiver and erroneously dismissed his motion. Appellant asks this Court to reverse the District Court's order dismissing his motion and remand the case with directions for the District Court to vacate his conviction of count eight of the indictment. Should we not send it back to have the District Court in the first instance determine actual innocence? It's our position that as the record currently stands, this Court could find that. I realize we could, but likewise we could send it back. Yes, that is our alternative request. If the Court does not feel that. Is there any argument that you have that it would be better for us to decide it ourselves and send it back? If the Court were to decide that on the record as it stands, Mr. Adams is actually innocent, it would give some direction to District Courts who, as you know, are dealing with several, many. To be sure it would give direction. But the only way that we have jurisdiction here, right, is to say that the plea agreement was not a bar, right? Right. And what would be our basis for saying the plea agreement is not a bar? Actual innocence is. So we would have to be determining actual innocence ourselves. That's right. So why would we send it back to determine whether there's actual innocence? It's our position that you don't need to. Well, that's what I was trying to tease out of you a minute ago, but you didn't say that. So your position is that he's actually innocent as a matter of law because of the change of the authority with the Simmons case. That's correct. Okay. So in order for us to do anything, we have to have made the determination because he did sign the plea agreement. That's correct. What's the interplay between Miller and Bowsley? I'm sorry? What's the interplay between Miller, our decision, and Bowsley? Bowsley, the Supreme Court decision. Bowsley is a case that discusses actual innocence and to some extent cites cases that are also applicable here, but Bowsley is not, is actual innocence in another context. The defendant in Bowsley had procedurally defaulted on his claim, and the court was deciding whether actual innocence in the procedural default context would allow him to get around that bar. This is actual innocence as an exception to appellate waiver, the enforcement of an appellate waiver. So we shouldn't transport the Bowsley theory into your case. That's right. Well, that's certainly your position, and you must have some reasons why that's so, so let's hear what they are. Yes, we do. We have four reasons. The first is sort of a general idea. If you consider what Bowsley, and to be clear, the part of Bowsley that requires a defendant who's actually innocent of a conviction as a result of a plea agreement to be actually innocent as well of every more serious dismissed count in the indictment. So that part of Bowsley, if you consider it, actually requires a defendant not to prove his innocence of a charge that he was convicted of after a trial or even after a plea agreement, but simply any charge that's more serious that was in the indictment and dismissed. Would this be a fair way to look at it? If he was charged with murder and reduced it to manslaughter, something's wrong with the manslaughter charge, yet he killed somebody. It's a homicide either way. So he can't go back and say, I'm actually innocent in that context. But in this context, everything's separate. That's right. The other charges in his indictment, counts one through seven, and this is count eight that we're discussing, were not more serious charges of the same type, count eight that ---- But I didn't think that the discussion, that's right, but I didn't think the discussion in Bowsley rested on that. I don't think you need to go that far. No, no, no, no, that's not my question. Is that why the court in Bowsley suggested you had to go back and find, reweigh the things that were not there? I didn't think it was. The sentence in Bowsley is very short and does not have any analysis. That's right, but it's in the Supreme Court. Oh, yeah, absolutely. It's our position that that sentence does not apply here at all, and so one need not consider whether it's more serious charges of the same type or more serious charges of an entirely different crime. You need not consider any more serious charges because this is not a procedural default context. But did the Bowsley court make the distinct, did they say that you should go back and consider these because they are the same type? The court didn't say that. No. Okay. So that's a gloss that you said, but they would have said if they weren't the same type, don't consider them. That's right. Don't say that. How do you get around the Copeland case? The Copeland case says that essentially these plea agreements are contractual, and if you were to apply it here, you would say that Mr. Adams got what he bargained for. That's right. That is correct. But the Fourth Circuit has held that they will not enforce an agreement, even if it is a fair bargain between the parties if a defendant is actually innocent of the crime. It's a miscarriage of justice in the language of the Fourth Circuit, and therefore principles that would otherwise apply don't apply. Okay. What were your other three points? Sure. So first, the fact that we're requiring a defendant to prove innocence, the opposite of a core legal principle in criminal law. The second is the fact that in procedural fault, actual innocence is not the defendant's only pathway to victory. A defendant who is innocent in trying to make that claim can either prove actual innocence or he can prove cause and prejudice. There's another pathway to victory, and therefore a higher standard for actual innocence isn't as much of a worry. In the case of an appellate waiver, there's only one way for a defendant who is innocent of his crime to get around the appellate waiver, and that is actual innocence. Therefore, requiring to apply the higher standard of Boozley-Gloss isn't as fair to a defendant  Third, procedural default. It sounds to me like the kind of argument that somebody might make to the Supreme Court and Justice Scalia wrote this? Who wrote Boozley? Justice Rehnquist. He wouldn't be around to be arguing with that. But people who signed on to that would think, yes, that's a distinction, but the distinction doesn't make any difference. That's why I wasn't really clear in your brief. I mean, the Supreme Court has not been reluctant to say people have waived or that an argument's foreclosed or that they no longer have an avenue so that I'm not sure that they would be too moved by that you have even less grounds or less avenues to proceed in this situation than you would have in Boozley. But I suppose it is a difference. It's a factual difference, and really all we are asking the court to do is to align itself with every other circuit court who's applied to Boozley case and only do so in the context of a procedural default, which is the same context of Boozley itself. No other circuit court has applied that Boozley law, that gloss on what actual innocence is, in the context of an appellate waiver. And to do so would be to adopt that. But no one said it doesn't apply. That's right. So confining it to procedural default would keep this court in line with other courts, whereas applying it in the context of appellate waiver would be taking a step that no other court has made. So I said there were four reasons, sorry, just to jump back. The third would be that procedural default is a unilateral action. That is, defendant has every bit of control over when he makes the argument and whether he makes that argument at the proper time. Appellate waiver, on the other hand, is a bilateral action. It's an agreement between the government and the defendant. The defendant has, as a result, somewhat less control, somewhat less power over what he pleads guilty to, which charges are brought, which charges are dismissed, and therefore less ability to decide or less ability to control what charges he'll have to prove his actual innocence of a crime if he were to later, as a result of a change of law or as a result of additional facts being found, find that he was innocent of a crime. Therefore, we should not apply this higher standard when the defendant has less control. And finally, the judicial interest in finality weighs less heavily in the case of an appellate waiver. A procedural default would arise in a case where there's been at least one chance for the defendant's conviction to be reviewed. If, in a context such as this, direct appeal, the defendant would have been able to argue on direct appeal that he was actually innocent and in a collateral attack have procedurally defaulted. In the context of an appellate waiver, there is no ability for any sort of appeal, and therefore there is no review of his conviction or, in other cases, his sentence. Well, you know, again, I guess those are differences, but can't you make differences if you were arguing the other side? For example, in the real world, procedural default is often not the defendant's problem. He's got a bad lawyer, and maybe not bad enough to be ineffective assistance, but bad enough so that this has happened. Or on the other side there, when you have this plea deal, the defendant is getting something for foregoing the right to appeal, where with procedural default, he's not getting anything at all. So that would sort of go contrary to what you're saying about the two problems with the appeal, right? That's right. But getting something, I think, is less of a good bargain for a defendant who's actually innocent of a crime for which he's in jail. Yes. He's actually innocent because this court decided Simmons, but he did commit those acts. We've now decided that those aren't felonies. That's right. It's not actual innocence like, you know, the witness against him has now fessed up that he, in fact, committed the crime. It's not actual innocence like as you see in the movies or on television. It's actual innocence that only we lawyers could talk about. All of the relevant facts that underlie these crimes in the indictment, that eight-count indictment, did occur, except for the fact that he was not a felon when it happened. Therefore, he could not have committed the crime of being a felon in possession of a firearm. So we've discussed why we believe that Boozley, that Boozley gloss on actual innocence, should not apply here. But to respond to the government's argument that the court would be unable to have two different rules, two different sets of rules for actual innocence, we'd like to highlight, first of all, earlier this year in which it said that it has applied broader principles or broader understanding of actual innocence in different contexts. In this case, we're pointing out that actual innocence can have different standards in procedural default context and in an appellate waiver context. And the Fourth Circuit has said that that is possible. In addition, in the government's own brief, it highlighted the fact that harmless error means different things in different contexts, specifically in direct appeal and in collateral attacks. And to respond to one of the earlier questions, if the court feels as though the record as it stands does not allow for it to find that the conviction should be vacated, we would like to ask for a remand with directions to the district court to hold an evidentiary hearing. As I said earlier in this, the court didn't acknowledge that actual innocence is even an exception to the enforcement of an appellate waiver. What kind of evidence would anybody offer in this case? We haven't done a factual investigation. On the actual innocence of the Simmons-Bard charge, what possible evidence could there be? It's our position, with respect to Count 8, which is what the Simmons case goes to, no other evidence would be necessary. If this court decides to apply the Boozley gloss and require the defendant to show actual innocence of the other more serious dismissed charges, we would like an evidentiary hearing to allow for a factual investigation, as the court required in Boozley and as the Fifth and the Eleventh Circuits have also required in actual innocence claims. Well, didn't your client confess to at least some of the other offenses? I realize that not all confessions stand the test of time, but didn't he confess to those? In the PSR, there's a note that he may have said some things. That's what criminal law is. In other contexts, the court has allowed for at least the defendant to try and bring evidence of actual innocence of the other charges. In this case, no ability has been given. But it's your position that you shouldn't be looking at these other charges anyway, right? Yes, that is our position, but if the court were to apply Boozley, we would like an evidentiary hearing. Well, if he's released from the appellate waiver, does that undo the purpose of the whole plea agreement, so that the government can go back and charge him with those other offenses? No. The actual innocence exception for appellate waivers only allows the court to review the account that the defendant claims he is innocent of. It does not reopen the entire bargain. Thank you very much. Thank you. May it please the court, my name is Michael Anderson with the United States Attorney's Office for the Eastern District of North Carolina, and I represent the United States. The defendant Simmons' argument here is both procedurally defaulted and barred by the appellate waiver in his plea agreement, because the defendant cannot show and in fact has not argued that he is actually innocent of more serious charges that were dismissed when he pled guilty. Okay, can we leave aside the most serious charges for just a minute? I mean, I understand that you're making that argument, but what argument did you make before the district court about the various waiver claims? The argument that was raised at the district court was that the defendant Simmons' argument fell within the appellate waiver. At the district court level, the United States did not argue that actual innocence is an exception to the appellate waiver. But I'd like to clarify that the government does not… But you now do acknowledge that. No, ma'am, and actually I would like to clarify that point. The government does not agree that the defendant is actually innocent. The government agrees that the defendant is legally innocent of his 922G conviction, because after Simmons, his North Carolina predicate felonies were no longer felonies for federal purposes. I hear what you're saying, but can you tell me a court that makes the distinction that you do? The Supreme Court does, Your Honor. It says somebody is legally innocent versus being actually innocent? You're talking about the Bowsley case? Your Honor, I'm talking about Bowsley, but I'm also talking about the pre-Bowsley cases. All of those cases make the distinction between legal innocence and factual innocence, and the Supreme Court holds that actual innocence means only factual innocence. It does not extend to legal innocence. But why isn't there factual innocence in this case? I'm sorry, Your Honor, I didn't hear you. Why isn't there factual innocence in this case? There's not factual innocence here, Your Honor, because the defendant is only challenging the legal classification of his predicate felonies. In this court, both in United States v. Pettiford and United States v. Surratt, held that factual innocence does not extend to challenges to the legal classification. Have you looked at Surratt lately? Both of you have. You looked to see what further history there might be going on about Surratt? No, ma'am, not subsequent history. But the factual innocence standard is what gives rise to actual innocence. The United States does not concede that the defendant is actually innocent. The defendant is legally innocent. Well, if you look at the facts, he's innocent, isn't he? Legally, yes. The United States does not concede. Well, legally and factually. The United States simply disagrees that the legal classification of his predicate felonies makes him factually innocent. But even putting the distinction between legal innocence and factual innocence... Okay, and where is this argument laid out in your brief? I'm sorry, Your Honor? Where is this argument laid out in your brief? The distinction between legal and factual innocence. The distinction. It's not. Well, you know, it really is helpful, you know, especially because the United States often argues to us default. Correct, Your Honor. That the defendant has defaulted arguments. The defendant hasn't preserved arguments. And then the United States currently comes up here and expects to be able to make arguments that it's never made before. Now, that doesn't seem quite right, does it? Your Honor, I'm not trying to present a new argument to the court. I'm simply trying to clarify what the United States' brief states. I'm sorry, but I asked you where it was in your brief. And maybe it is here somewhere. Just show me where it is. It's not in the specific terms of the distinction between legal and factual innocence. The United States simply states in its brief that the defendant no longer has the predicate felonies for federal purposes after Simmons. That the North Carolina felonies that he was convicted of are no longer classified as felonies for federal purposes. That is stated in the brief. However, the United States does not rest on the distinction between legal innocence and factual innocence. Instead, the United States argues that the Bowsley standard should apply. And it should apply, Your Honor, for three reasons. First, because this case arises in the same procedural context as Bowsley. Second, because the rationale underlying the Bowsley actual innocence standard applies with equal force here. And third, because this case and Bowsley are factually similar. As to the procedural context, this case, like Bowsley, does arise in the context of procedural default. It also, like Bowsley, arises in the context of collateral review from a plea agreement. And that particular context is important when understanding the rationale underlying Bowsley. Did you argue procedural default below? We did not, Your Honor. The government acknowledges that the better practice would have been to raise the procedural default argument below. Isn't there a Fourth Circuit law saying that when the government doesn't argue procedural default, they default at the argument? Your Honor, in the Yeats v. Angelo case, this court did state that procedural default generally is an affirmative defense. However, in Yeats, this court allowed a litigant to raise a procedural default argument, even though the litigant had not previously raised it at the district court level. And furthermore, Your Honor, this court has consistently held that it can affirm for any reason that appears on the record. That would include the procedural default argument that the United States has raised here. And the United States would also note that the waiver argument that the defendant raises is not properly before the court. Although the United States raised its procedural default argument in its informal response brief, which was filed four months before the defendant's formal opening brief, the defendant's formal opening brief did not address the procedural default argument or raise waivers. It's an affirmative defense. They addressed it in their reply brief. They pointed out that you've never raised it before. And that's correct. It is addressed in the reply brief. But, Your Honor, because this court in Yeats allowed a litigant to raise the procedural default argument, even though it was not raised at the district court level, and because this court has consistently held that it can affirm for any reason appearing on the record, the United States submits that this court can look to the procedural default argument. However, if the court – How are they supposed to know that you're going to argue it before you file your brief? I used to practice law, and I never tried to guess what my opponent was going to argue. We're not asking for them to have done that. But, Your Honor, like I was saying, the procedural default argument was raised in the United States' informal response brief. There are some times that you probably have had this experience yourself. There are things that are raised in the informal brief that don't appear in the brief, and there are things that appear in the brief that weren't in the informal brief. That is correct, Your Honor. But even if this court were to disagree with the United States' argument on procedural default, the defendant's sentence claim is still barred by the appellate waiver. And I want to return to the reasons that the Bousley standard applies to this case and the similarities between Bousley and this case. And I had already covered the procedural context of this case in Bousley, and I'd like to cover the rationale for the Bousley decision. The rationale for the Bousley decision is a finality concern. And the Supreme Court stated that when a case is on collateral review from a plea agreement, that those finality concerns are particularly pronounced. And like I said, this case does arise on collateral review from a plea agreement, which makes the rationale, the finality rationale that the Supreme Court cited, which the defendant acknowledges, it makes that rationale applicable here. And in addition, this case is factually similar to Bousley. In Bousley, the defendant's innocence claim was predicated on a subsequent change in case law. Here as well, the defendant's innocence claim, which is based on Simmons, is predicated on a subsequent change in case law. And in that context, the Supreme Court articulated the actual innocent standard, which requires a showing by the defendant that he's actually innocent of the more serious charges language that were dismissed when he pled guilty. And here, the defendant cannot make that showing. Well, how do you know that? They haven't had a chance yet, have they? I mean, you're probably right, but don't they get a chance to, don't they get a day in court on that? Like you noted, Your Honor, the defendant has confessed to the conduct that was charged in the dismissed counts. And the facts to which the defendant confessed are stated in the defendant's PSR. But I've got a case in my own court right now involving these four people called the Norfolk Four who all confessed to something and say they didn't do it. And there's a book about it that some law professor wrote. So now we give it a lot of credit. Yeah, that makes it irrefutable. But, you know, there's all kinds of cases where people confess things they didn't do. And that's correct, Your Honor, in the general sense. But in this case, the defendant had an opportunity to object to the facts that were stated in his PSR. He didn't object before his sentencing. He did not object when specifically asked by the district court in open court and under oath at his sentencing. Nor did he object when the United States relied on those facts as the basis for an upward departure for the dismissed conduct. Nor did he object when the district court relied on those facts for granting the government's motion for an upward departure. So the defendant had multiple opportunities to object to the facts in the PSR, and he did not. And in this court's decision in United States v. Fugit, this court relied on the unopposed facts in a PSR to deny a claim of actual innocence without further remand to the district court. And because the defendant here has not objected to the facts in his PSR, we simply asked the court to reach that decision again here. But you had an eight-count indictment. Seven of those things occurred in different places, different dates, different circumstances. And you got just one count on the felon in possession. That's right. It's not like the example I gave your closing counsel where he was charged with murder. He let him plead manslaughter. Well, the question is, was there a homicide? The question here is, did he have a right to possess that gun? And after Simmons, the government does not contest that the defendant had the right to possess that gun. Legally, he is innocent, like I've said. That makes him factually innocent. That is factually innocent because he could have possessed the gun, right? Your Honor, the United States simply disagrees with that conception of factual innocence. But, again, the United States is not resting on the distinction between factual and legal innocence. He had factually committed the priors. Yes, Your Honor. But he could still factually possess the gun. After Simmons, yes, he could have. You know, I don't think this factual argument is going too far for you. Again, Your Honor, the United States, like I've said, is not resting on that distinction. The United States, for the reasons I've stated, simply thinks that Bowsley's actual innocent standard applies here and that the defendant, because he confessed to the conduct charged in the dismissed counts and because that conduct is stated in the PSR to which the defendant did not object. Well, isn't the ultimate test whether there is a manifest injustice? Yes, Your Honor. And isn't when he gets convicted of something that he didn't, it's not a crime, isn't that? It's certainly manifest, and it seems to me like it's at least unfair if not unjust. Why is that not manifestly unjust? Your Honor, the United States recognizes the manifest injustice language and that manifest injustice has been interpreted to mean innocence. I think the larger point that Your Honor is raising, and please correct me if I'm wrong, is that habeas review ultimately is an equitable remedy. Habeas relief is an equitable remedy. And here, Your Honor, the United States submits that the equities actually weigh in favor of enforcing the appellate waiver for three reasons, and with the Court's indulgence, I'd like to lay out those three reasons and then I would like to return to the first one and spend a little more time on it. The first reason is that applying the appellate waiver here is actually more beneficial to the defendant than not applying the appellate waiver. And again, I'll address that a little further in a moment. The second reason is that applying the appellate waiver here promotes finality, and that finality in turn conserves valuable judicial resources not only at the district court level, but also at this court should there be any appeal from further proceedings. It also allows the defendant to face forward rather than looking in the rearview mirror and focus on rehabilitation for his pending release. And the final argument on the equities is that enforcing the appellate waiver here does enforce the agreement that the parties reached. And the Court had previously raised Copeland. In Copeland, this Court applied an appellate waiver to bar a Simmons claim, holding that when an appellate waiver is knowingly and voluntarily entered into, that a subsequent change in case law does not suddenly reopen the door to renegotiation and rebargaining, and that's the situation that we have here. Now, like I said, I wanted to return to the first point, which is that applying the appellate waiver in this case is actually more beneficial to the defendant than not. Well, we generally let the defendant decide what's most beneficial to him and not the government. And the Court certainly may do that. And the United States is not intending to substitute its judgment for the courts or for the defendant. It's simply noting my apologies, Your Honor, I didn't intend for it to sound that way. I'm simply explaining the way that the United States reviews or sees the potential consequences for not applying the appellate waiver. If the appellate waiver is applied, the defendant will still serve the 20-year sentence that he received in this case because of the other sentences that are not at issue. If the defendant was 22 at the time of sentencing, so after that 20-year sentence, he will be approximately 42, assuming that there is no good time credit applied. If the appellate waiver is not enforced, and if the 922G conviction is vacated, the defendant still will serve that 20-year period because of those other sentences, but the United States can seek to reinstate the dismissed charges, the five dismissed charges pursuant to 18 U.S.C. section 3296. If the United States chooses to do that, by statute reinstatement is mandated. And the potentially reinstatable charges include two 924C counts. Because the defendant here has already pled guilty to one 924C count, those additional two 924C counts would be second or successive counts, meaning by statute they carry a mandatory minimum of 25 consecutive years each. In other words, by not enforcing the appellate waiver, if his 922G conviction is vacated, the defendant not only will continue to serve his 20-year sentence, but faces a possibility of an additional 50 years. And I'm not standing here before the court. I think that's an extraordinary argument for the United States to make. I really do. I mean, I'm just, one time I was in one of the courtrooms here, and Judge Winter said to me, I'm surprised to hear that the state of Maryland would make that argument. And I'm surprised to hear the United States make that argument. In other words, you say if he pursues this appeal, you're going to, you, in terms of the United States attorney, are going to punish him with an additional 50-year sentence? Is that what you're saying? Your Honor, I'm not saying that the United States will do it. I'm simply stating that the United States has the ability to make that motion and that the United States is contemplating making that motion. But, again, I'm not stating the United States will. And even if the United States does, I'm not stating that the district court. But you're using it as an argument trying to convince us to rule with you. So we've got to assume. I mean, you're asking us almost to assume that you will do that. I don't know how far you're going to get with it from the district court if you do. I frankly don't really understand why you just confessed error in this case because the district court, when the case is remanded to the district court, can make the same sentence here, right? Yes, Your Honor. So maybe lay it out for the likes of me why then you would, all that we would be doing would be eliminating a conviction. Correct. That he is now not guilty of the crime and the fee that goes with that. The special assessment. Special assessment, yeah. And the district court could impose the same sentence. It could. And I thought that one of your arguments was the district court said it was going to impose the same sentence. Yes, even if the 9th. You've already told us that. No matter what happens, I'm going to impose the same sentence. That's correct, Your Honor. The district court did say that. Well, if the case gets remanded, can you then assert procedural default as an affirmative defense? I'm not sure, Your Honor. I believe that we could. Me neither. But I'm not sure. Okay. Unless there are any further questions from the court, I'll briefly conclude my argument. Seeing none, for the reasons that I've stated here and the reasons contained in our brief, respectfully, the United States requests that the court affirm the district court decision. Thank you. Thank you. Well, what about it? If the court remands the case, can they then assert the affirmative defense and then you're stuck with all the Bousley problems? It's our position that the conviction can be vacated at this point based on the record as it currently stands and not sent back to the district court for additional proceedings. Even if we vacated it, it would still go back to the district court, wouldn't it? That's right. No, I thought you just said it wouldn't go back to the district court for further proceedings. I'm sorry. Maybe I misspoke. If you vacated the conviction, yes, the case would go back to the district court. I'm sorry. I misunderstood. I thought you meant if we just remanded without vacating. Well, I probably used the word vacate. I apologize for that. Okay. So if we just remanded it, government can argue procedural default then, can't it? It could. We didn't brief that. We were focusing on the issue raised in the certificate of appealability. If the court would like us to file supplemental briefing on that, we do have an argument on procedural default. Have you had any discussions with the United States Attorney about this suggestion that they would then ask the district court to impose an additional 50-year sentence? We have not. They haven't suggested to you that that would be a possibility before today? No. So I just wanted to raise three quick points and answer any additional questions if the court has them. First of all, the government raised the idea that there are similarities to Bowsley and that those require the court to then apply Bowsley in this context. Our position is that the required showing for actual innocence is different in the context of procedural default, and therefore any factual similarities are irrelevant when that is a procedural default context and this is an appellate waiver context. Second, the appellate waiver question is properly before the court, contrary to what the government argued. The court issued a certificate of appealability asking whether the appellate waiver barred the actual innocence argument. If that doesn't mean that the question is before the court of appeals, then I don't know what does. And finally, as the court suggested, the government did not raise procedural default in front of the district court below. That argument has been forfeited, and the Fourth Circuit has stated that issues not listed in the certificate of appealability are not properly before the court and the court is unable to review them. Other circuits have gone as far as saying the court doesn't have jurisdiction to consider such arguments. All right. Thank you. I think we understand your position. We will come down and Ms. Jackson, I understand you're court appointed. We very much appreciate your effort. We'll come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, Henry F. Floyd, John A. Gibney Jr.